IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Demario Covington,<br><br>    PETITIONER,<br><br>  v.<br><br>Nanette Barnes, FCI Bennettsville, Warden,<br><br>    RESPONDENT. | Civil Action No. 1:21-cv-3780-TLW<br><br>**ORDER** |

Petitioner Demario Covington ("Petitioner") brings this *pro se* action pursuant to 28 U.S.C. § 2241. ECF No. 1. This matter now comes before the Court for review of the Report and Recommendation ("Report") filed by United States Magistrate Judge Shiva V. Hodges. ECF No. 28. The Report recommends that this action be dismissed without prejudice for lack of jurisdiction. ECF No. 28 at 14–15. Petitioner has filed objections to the Report. ECF No. 30. The Court has reviewed both the Report and Petitioner's objections. Accordingly, this matter is now ripe for the Court's review, adjudication, and disposition.

PROCEDURAL HISTORY

The Court incorporates the following relevant procedural history from the Report:[1]

> On March 22, 2011, the Government indicted Petitioner as part of nineteen-count indictment against Petitioner and others. In Count One of the Indictment, Petitioner was charged with conspiracy to possess with intent to distribute and to distribute five kilograms or more

---

[1] For ease of reading, the Court has removed internal citations and footnotes.

Page **1** of **16**

of cocaine and 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. In Count Two of the Indictment, Petitioner was charged with possession with intent to distribute and distribution of a quantity of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). On May 15, 2012, Petitioner pled guilty to Count One pursuant to a written plea agreement. On August 14, 2012, Petitioner filed pro se motions to withdraw his guilty plea and to remove counsel and have new counsel appointed. His motion to withdraw his guilty plea was denied, but his motion to have new counsel appointed was granted. After the United States Probation Office prepared a Presentence Investigation Report ("PSR"), Petitioner and the Government entered an addendum to the plea agreement with a stipulated sentence of thirty-five years' imprisonment. On December 13, 2012, the court sentenced Petitioner to 420 months' imprisonment to be followed by ten years of supervised release. Thereafter, Petitioner appealed the denial of his motion to withdraw his guilty plea. The Fourth Circuit affirmed Petitioner's conviction and sentence, finding the district court did not abuse its discretion in denying the motion to withdraw the guilty plea.

On December 10, 2014, Petitioner filed a pro se motion to vacate his sentence under 28 U.S.C. § 2255, alleging ineffective assistance of counsel. In July 2015, Petitioner filed a pro se motion to amend his § 2255 petition and add additional claims of ineffective assistance of counsel. In an order filed April 13, 2016, the court denied both Petitioner's motion to amend and his § 2255 petition. Petitioner filed a motion to alter or amend the judgment, which was also denied. Petitioner appealed to the Fourth Circuit the denial of his § 2255 petition and the motion to alter or amend, but the appeal was dismissed. In May 2015, while his § 2255 petition was pending, Petitioner filed a pro se motion to reduce his sentence under 18 U.S.C. § 3582(c)(2) because the United States Sentencing Guidelines ("Guidelines") sentencing range had subsequently been lowered and had been made retroactive. However, the court denied the motion because Petitioner's "sentence was based on a Rule 11(c)(1)(C) agreement to 420 months incarceration, rather than the Guidelines[,]" and additionally, "there was a cross-reference to a more severe guideline, specifically § 2A1.1 (First Degree Murder)." Petitioner appealed the court's decision, but the Fourth Circuit affirmed.

On July 11, 2018, Petitioner filed a motion to reduce his sentence under 18 U.S.C. § 3582(c)(2). In April 2019, Petitioner filed a motion to reduce his sentence based on the First Step Act of 2018. In July 2019, Petitioner filed another motion to reduce his sentence based on the First

Step Act of 2018. On June 24, 2020, the court denied Petitioner's motion to reduce his sentence under 18 U.S.C. § 3582(c)(2), finding "[t]his case does not qualify because there was a cross-reference to a more severe guideline, specifically § 2A.1.1 (First Degree Murder)[,]" and "even if the cross-reference did not apply, the Chapter Two calculations would have been trumped by the Chapter Four enhancements and found the other to be moot. Petitioner appealed the court's denial of his motions to have his sentence reduced, but the Fourth Circuit denied the appeals.

On January 11, 2021, Petitioner filed a motion for compassionate release, which was denied by the court on August 20, 2021. Petitioner appealed the Court's decision, but his appeal was denied by the Fourth Circuit.

ECF No. 28 at 1–5.

## RELEVANT BACKGROUND

In order to provide context to the petition, the Court will briefly discuss the relevant background and history of Petitioner's conviction and plea:[2]

### A. THE INDICTMENT AND PLEA

Petitioner was the lead defendant in a twelve-defendant, nineteen-count Indictment filed on March 22, 2011. ECF No. 3. The Indictment charged him with one count of conspiring to possess with intent to distribute and to distribute 5 kilograms or more of cocaine and 280 grams or more of crack cocaine (Count 1), and one count of substantive possession with intent to distribute a quantity of crack cocaine (Count 2). Attorney James Battle was appointed to defend him. ECF No. 60.

Prior to jury selection, the Government filed an Information pursuant to 21

---

[2] All docket citations, transcript references, and portions of the relevant presentence investigation report cited under the "Relevant Background" heading are derived from Petitioner's criminal case, *United States v. Covington*, 4:11-cr-00417-TLW-1 (D.S.C. March 22, 2011). The citations cited in the remaining portions of this order are derived from the instant § 2241 action, *Covington v. Barnes*, 1:21-cv-03780-TLW (D.S.C. Nov. 18, 2021).

U.S.C. § 851, notifying Petitioner that it intended to rely on four prior felony drug convictions to enhance his statutory sentence to mandatory life imprisonment from the 10 years to life range applied absent the enhancement. ECF No. 607.

The Court held jury selection on May 14, 2012, and Petitioner's trial was set to begin the following day. On the morning of trial, he notified the Court that he intended to plead guilty pursuant to a plea agreement. Plea Tr. 2:1–23. In exchange for a guilty plea to the drug conspiracy count, the Government agreed to dismiss the substantive count and withdraw all but one of the § 851 enhancements, resulting in a statutory sentencing range of 20 years to life imprisonment. *Id.* 6:17–7:5. After a thorough Rule 11 colloquy, the Court accepted his guilty plea. *Id.* 27:9–13.

### B. PETITIONER'S OFFENSE LEVEL, CRIMINAL HISTORY CATEGORY, AND GUIDELINES RANGE

After Petitioner's plea, the U.S. Probation Office prepared a presentence investigation report in which Probation concluded that he should be held accountable for 31.3 kilograms of crack cocaine, resulting in a base offense level of 38.[3] PSR ¶ 145. Additionally, as a result of a drug-related murder that he allegedly helped to orchestrate, Probation determined that a cross-reference to first degree murder should apply. PSR ¶¶ 12–13, 147. This resulted in a revised base offense level of 43. Probation also concluded that he should receive a two-level firearm enhancement, a four-level role enhancement, a two-level obstruction enhancement, and that he

---

[3] The PSR was prepared using the 2009 Guideline Manual, which required at least 4.5 kilograms of crack for a base offense level 38. U.S. Sentencing Guidelines Manual § 2D1.1(c)(1) (2009); PSR ¶ 142. The current edition of the guidelines requires at least 25.2 kilograms of crack for a base offense level of 38. U.S. Sentencing Guidelines Manual § 2D1.1(c)(1) (2015). The 31.3 kilograms for which the PSR held Petitioner accountable exceeds both amounts.

Page 4 of 16

should not receive a reduction for acceptance of responsibility. PSR ¶¶ 146, 149–150, 153. As a result, *his total offense level was 49*. PSR ¶ 154. This level in and of itself is noteworthy because the sentencing table only goes up to *level 43*. U.S. Sentencing Guidelines Manual ch. 5, pt. A, cmt. n.2 (2009). In scenarios like this, an offense level of more than 43 is treated as an offense level of 43. *Id.* Further, Petitioner's prior criminal record—through *both* a standard calculation of criminal history points as well as through his classification as a career offender—resulted in him being in a criminal history category of VI. PSR ¶¶ 126–27. As a result, his advisory guideline range was life imprisonment, according to either his guideline calculation or his career offender classification. PSR ¶ 174.

In calculating Petitioner's offense level, the PSR included a cross-reference to the murder of Wayne Simmons, Jr., which was committed during the course of the drug conspiracy. PSR ¶ 147. This cross-reference provided a further enhancement to his offense level. *Id.* The facts surrounding this murder warrant inclusion here. On December 21, 2008, Simmons was found shot to death at 410 Third Avenue, Bennettsville, South Carolina. PSR ¶ 12. Simmons had been shot in the right side of his head behind his ear, twice in his left back, and once in his left leg. *Id.* Investigation into Simmons' murder reveled that Simmons was killed in response to an earlier robbery, which took place the day before. *Id.* During this robbery, Simmons robbed Petitioner's brother, Sedrick Covington, of approximately $350.00. *Id.* According to witnesses, Petitioner was present during this first robbery. *Id.* Further investigation revealed that Simmons' murder had been arranged by both Petitioner and his

brother. *Id.* Following the shooting, Petitioner retrieved the stolen money from Simmons' corpse and paid Simmons' assailant with crack cocaine. *Id.* As a result, Petitioner was charged in state court with accessory after the fact of a felony (Count 1), conspiracy to commit murder (Count 2), and Accessory before the fact of murder (count 3). PSR ¶ 141. As noted in the PSR, this conduct was part of the offense conduct forming the basis of the Indictment. *Id.*

Mr. Battle filed extensive objections on Petitioner's behalf. Specifically, he objected to the application of the murder cross-reference, the obstruction enhancement, the firearm enhancement, the role enhancement, and the denial of acceptance of responsibility. If he prevailed on all of these objections, his total offense level would have dropped to 36 and his criminal history category would have remained VI, resulting in a guideline range of 324 to 405 months incarceration.

After Mr. Battle filed these objections, Petitioner filed *pro se* motions to withdraw his guilty plea and to fire Mr. Battle. ECF Nos. 710, 711. The Court held a hearing on these motions and denied his motion to withdraw his guilty plea but granted his request for a new lawyer. ECF No. 727. The magistrate judge appointed Attorney Melvin Cockrell to represent Petitioner going forward. ECF No. 734.

### C. PETITIONER'S 11(C)(1)(C) PLEA AGREEMENT

On the morning of the sentencing hearing, the Government filed an addendum to the plea agreement, signed by Petitioner, that read, in full, as follows:

> If the defendant complies with the terms of this Agreement, both parties agree that the appropriate disposition of this case (irrespective of any fines and/or forfeitures) is a sentence of 35 years actual incarceration, followed by the appropriate statutory term of supervised release. In the

> event that the defendant complies with all terms of this Agreement and the Court declines to impose this sentence, the Defendant will have the right to withdraw his FRCRP 11(c)(1)(C). If the Defendant does not comply with all the terms of this Agreement, the United States will seek the maximum sentence allowed by law and the Defendant will not be allowed to withdraw his plea.

ECF No. 770. At the hearing, the Court thoroughly discussed this agreement with Petitioner and ensured that he consented to the stipulated sentence and the effect it would have on his guideline calculation. The Court stated that it was inclined to accept the agreement and would therefore *forgo ruling on his objections* to the PSR and would simply impose a 35-year sentence:

> THE COURT: I'm prepared to impose a 35-year sentence. If we do that, we will not have a debate about the guidelines. We won't have a debate. We won't take up the objections. We won't resolve the disputes. I'll simply impose a 35-year sentence. We will not have a guideline dispute and we will not address the objections to the presentence report in the case.
>
> And I am asking you, Mr. Cockrell, is that what your client wants me to do?
>
> MR. COCKRELL: Yes, Your Honor.
>
> THE COURT: And I am asking you, Mr. Covington, is that what you want me to do?
>
> PETITIONER: Yes, sir.

Sent. Tr. 10:21–11:9. After thoroughly discussing the issue with counsel and Petitioner, the Court accepted the agreement and imposed a 35-year sentence. ECF No. 777.

## THE PARTIES' ARGUMENTS

Petitioner filed the instant § 2241 petition on November 18, 2021, against the warden of the facility in which he is imprisoned, Nanette Barnes, Warden of FCI

Bennettsville ("Respondent"). ECF No. 1. Petitioner asserts that he was improperly sentenced in light of *Mathis v. United States*, 579 U.S. 500 (2016). *Id.* Specifically, Petitioner claims that his sentence violates *Mathis* because the prior convictions used to classify him as a career offender were obtained under South Carolina statutes that are indivisible and contain elements that are broader than the definitions of "controlled substance offense" or "crime of violence" in the career offender guideline, U.S.S.G. § 4B1.2(a). ECF No. 1–2 at 6–15. As a result, Petitioner claims he was improperly classified as a career offender resulting in an "illegally enhanced sentence." *Id.* at 20. In his § 2241 petition, Petitioner asserts that his claim for relief satisfies the gate keeping requirements articulated by the Fourth Circuit in *United States v. Wheeler*, 886 F.3d 415 (4th Cir. 2018), and he can thus seek § 2241 relief pursuant to § 2255's savings clause. *Id.* at 2–20.

In response, Respondent has filed a motion to dismiss the petition for lack of jurisdiction. ECF No. 22. Respondent argues that this Court lacks jurisdiction to consider Petitioner's § 2241 petition because he fails to satisfy either the second or the fourth prongs of the *Wheeler* test and thus cannot show § 2255 is inadequate to test his sentence. ECF No. 22–1 at 4–8.

## THE MAGISTRATE JUDGE'S REPORT

In her Report, the magistrate judge concluded that the petition is subject to dismissal for lack of jurisdiction. ECF No. 28. The Court will now review the key findings of the Report before reviewing Petitioner's objections and conducting its own analysis.

First, the magistrate judge set forth the appropriate standard in which to analyze whether the Court has jurisdiction over Petitioner's petition. As noted in the Report, Petitioner is seeking to obtain relief from his sentence under § 2241, which is typically used to challenge the manner in which a sentence is executed. *Id.* at 7. Normally, a prisoner is obliged to seek habeas relief from their convictions and sentences through § 2255, and a petitioner cannot challenge a federal conviction and sentence under § 2241 unless he can satisfy the § 2255 savings clause, which states:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

*Id.* (quoting 28 U.S.C. § 2255(e)). Generally, Courts lack jurisdiction to consider a § 2241 petition outside of the savings clause unless a petitioner can meet the four-part test articulated by the Fourth Circuit in *Wheeler. Id.* (citing *Rice v. Rivera*, 617 F.3d 802, 807 (4th Cir. 2010)). That test requires:

> (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review; (3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

*Wheeler*, 886 F.3d at 429. The magistrate judge then applied the *Wheeler* test to the facts of this case and found that Petitioner had not demonstrated that its

requirements had been satisfied. ECF No. 22 at 8.

Specifically, the magistrate judge found that the second prong of the *Wheeler* test had not been met. *Id.* The second prong requires that "subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review[.]" *Wheeler*, 886 F.3d at 429. Here, the magistrate judge found that, contrary to Petitioner's arguments, *Mathis* did not change the settled substantive law and was not deemed to apply retroactively on collateral review. ECF No. 22 at 8–10. In support of this finding, the magistrate judge noted that the Fourth Circuit recently held in *Ham v. Breckon*, 994 F.3d 682, 692, 695 (4th Cir. 2021), that "Mathis did not change the settled substantive law of the Supreme Court or of the Fourth Circuit as it pertains to South Carolina third-degree burglary." *Id.* at 9. Therefore, "in accordance with *Ham*" the magistrate judge concluded that "Petitioner cannot meet the second prong of *Wheeler*" because "Petitioner has not alleged a retroactively-applied change in relevant substantive law subsequent to his first § 2255 motion and therefore fails to meet the § 2255 savings clause requirements." *Id.* at 10.

Next, the magistrate judge found that, assuming *arguendo* that Petitioner met *Wheeler*'s second prong, Petitioner could still not meet *Wheeler*'s fourth prong by showing that his alleged misclassification as a career offender "now presents an error sufficiently grave to be deemed a fundamental defect." *Id.* at 11 (quoting *Wheeler*, 886 F.3d at 429). In support of this conclusion, she noted that it is only possible that an alleged misclassification as a career offender could meet *Wheeler*'s fundamental

defect prong is if the sentencing occurred *prior* to *United States v. Booker*, 543 U.S. 220 (2005), when the Sentencing Guidelines were mandatory. *Id.* Here, Petitioner was sentenced *after Booker.* Therefore, the magistrate judge concluded that Petitioner "has not shown his designation as a career offender is an error that rises to the level of a fundamental defect." *Id.* at 12.

Furthermore, the magistrate judge held that Petitioner's Guideline Range of life imprisonment was *not,* in fact, driven by his status as a career offender. *Id.* at 14. Rather, it was "based on multiple aspects of the PSR and independent of his status as a career offender." *Id.* In support of this the magistrate judge noted that

> (1) Petitioner's total offense level of 49 was not driven by his career offender designation, but by the combination of the murder cross reference, and the enhancements for his role in the offense and obstruction of justice . . . and an offense level of 43 triggers a Guidelines range of life imprisonment regardless of criminal history category; and (2) Petitioner's total number of criminal history points was sufficient to place him in the highest criminal history category of VI even without the career offender designation.

*Id.* at 13 (cleaned up). Accordingly, the magistrate judge found that "Petitioner has not satisfied the fourth prong of *Wheeler*" because "the alleged error in this matter is not sufficiently grave to be a fundamental defect." *Id.* at 14.

In conclusion, the magistrate judge found that Petitioner could not reach the savings clause of § 2255 since Petitioner could not meet either the second or fourth *Wheeler* prongs. *Id.* Therefore, the magistrate judge concluded she lacked jurisdiction to consider the petition and recommended that that this Court dismiss the petition without prejudice. *Id.*

Petitioner filed two objections to the Report. ECF No. 30. First, Petitioner asserts that *Mathis* applies retroactively and that he, therefore, meets *Wheeler*'s second prong. *Id.* at 1. Second, Petitioner asserts that the magistrate judge erred in concluding that he could not meet *Wheeler*'s fourth prong. *Id.* Specifically, he argues that the murder cross-reference in his Guideline calculation should not and does not apply. *Id.* at 1–2. The Court will take up each of these objections in review of the Report.

## STANDARD OF REVIEW

In conducting its review, the Court applies the following standard:

> The magistrate judge makes only a recommendation to the Court, to which any party may file written objections.... The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a *de novo* determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the report and recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

*Wallace v. Housing Auth. of the City of Columbia*, 791 F. Supp. 137, 138 (D.S.C. 1992) (citations omitted).

## ANALYSIS

In light of the standard set forth in *Wallace*, the Court has reviewed the Report, the objections, and other relevant filings and agrees with the magistrate judge that it lacks jurisdiction to consider the petition.

Initially, the Court finds that Petitioner's first objection asserting that the magistrate judge erred in concluding that Petitioner could not meet the second prong of the *Wheeler* test is without merit. Petitioner's contention that *Mathis* changed the settled substantive law and applies retroactively is rebutted by the plain language of *Ham,* wherein the Fourth Circuit held "*Mathis* was merely restating an old rule. . . . *Mathis* did not change the settled substantive law of the Supreme Court with regard to when a court should apply the categorical or modified categorical approach." 994 F.3d at 692 ("We decline to hold that Mathis's explanation about how to determine whether parts of a statute are 'elements or means' changed this circuit's substantive law applying the modified categorical approach to South Carolina third degree burglary."). Accordingly, the Court overrules Petitioner's first objection and accepts the magistrate judge's conclusion that Petitioner cannot meet *Wheeler*'s second prong.

Similarly, the Court finds that Petitioner's second objection is without merit. Petitioner asserts that the magistrate judge erred in concluding that he could not meet the fourth prong of the *Wheeler* test. Specifically, Petitioner believes that the murder cross-references in his Guideline calculation does not apply and offers that the charges of accessory before and after the fact of murder and of criminal conspiracy to commit murder were dismissed in state court due to lack of evidence. ECF Nos. 27 at 3 & 30 at 2. In support of this objection, Petitioner refers to a 2013 letter provided by an assistant solicitor stating that the murder-related charges would be dismissed "due to lack of evidence; probable cause existed to obtain the warrants based on an

informant's statement, but there is insufficient evidence to convict at this time." ECF No. 27–1.

Like Petitioner's first objection, this argument is contradicted by caselaw, which holds that "a defendant need not be convicted of the charges constituting relevant conduct for him still to be held accountable for them." *United States v. Jones*, 31 F.3d 1304, 1316 (4th Cir. 1994); *see also United States v. Scott*, No. CR 9:08-583-SB, 2013 WL 12250540, at *4 (D.S.C. July 2, 2013) ("District courts may take 'relevant conduct' into account when determining a defendant's sentence, whether or not the defendant has been convicted of the charges constituting the relevant conduct.") (quoting *United States v. Green*, 101 F.3d 696, 1996 WL 662555, *2 (4th Cir. 1996)). As noted by the magistrate judge, Petitioner has not offered any case law to support his argument that the cross-reference should not apply to his case and that the District Court was barred from considering it as relevant conduct. ECF No. 28 at 13. As well, a state-based prosecutor's opinion has no binding affect on a federal district court's decision to apply a murder-cross reference as relevant conduct or to impose an appropriate sentence pursuant to federal law. The Court overrules Petitioner's second objection and accepts the magistrate judge's conclusion that Petitioner cannot meet the fourth prong of the *Wheeler* test. It is also appropriate to note that there was a Rule 11(c)(1)(C) stipulated sentence in the plea agreement that enabled Petitioner to reduce his sentence below the applicable Guidelines range, which was life imprisonment based on an offense level of 43. By contract, Petitioner

agreed the sentence in his case would be 420 months, in light of all relevant facts—including the commission of the homicide referred to in the PSR.

Finally, the Court finds it necessary to reiterate that Petitioner's sentence was driven by his Guidelines' calculation as set out in his PSR, *not* based on his status as a career offender. The arguments raise by Petitioner, namely his *Mathis* argument, seek to address his career offender status by contesting the status of prior convictions as career offender predicate offenses. Even if Petitioner were relieved of his career offender status, it would have no impact on the applicable sentencing Guidelines. If his career offender designation was removed, his total offense level would remain 49 with the murder cross reference—which, in reality, is the equivalent of the maximum total offense level of 43. Even if the murder cross-reference in the PSR was removed, his offense level would be 46, again, the equivalent of an offense level of 43. An offense level of 43 triggers a Guideline range of life imprisonment *regardless* of criminal history category.[4] Thus, Petitioner's Guideline range would remain the same (life imprisonment) irrespective of either the inclusion of the murder cross-reference or Petitioner's designation as a career offender. Hence, Petitioner cannot show that § 2255 is inadequate or ineffective to address an allegedly improper sentence. As well—as the discussion in this paragraph shows—there is no change in settled substantive law that would apply retroactively. Further, there is no "fundamental defect" in this sentence. *Wheeler*, 886 F.3d at 429.

---

[4] The Court notes, however, that Petitioner's total number of criminal history points was sufficient to place him in the highest criminal history category of VI—even without the career offender classification.

## CONCLUSION

After careful review of the Report and the objections, for the reasons stated by the magistrate judge, the Report, ECF No. 28, is **ACCEPTED**. Petitioner's objections, ECF No. 30, are **OVERRULED**. Petitioner's motion for relief pursuant to § 2241, ECF No. 1, is **DENIED**. This action is hereby **DISMISSED WITHOUT PREJUDICE**. **IT IS SO ORDERED.**

                                                       *s/Terry L. Wooten*
                                            Senior United States District Judge

January 26, 2023
Columbia, South Carolina